Miller, Adm'r, *v.* The Louisville, New Albany and Chicago Railway Co.

Filed April 22, 1891.

---

No. 14,755.

## MILLER, ADMINISTRATOR, *v.* THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY.

NEGLIGENCE.—*Contributory Negligence.*—The negligence of the driver of a wagon can not be imputed to one who is riding in the wagon with him, but the latter can not recover unless it affirmatively appears that he was free from contributory negligence.

RAILROAD.—*Accident at Crossing.*—*Contributory Negligence.*—Where a wife was riding in a wagon with her husband who was driving, and they approached a railroad crossing, known by the wife to be dangerous, when a train was coming up in full view, and the husband stopped the team, but immediately afterwards attempted to cross in front of the train and both were killed, the wife in failing to warn the husband or to look or listen for approaching trains was guilty of contributory negligence, and there can be no recovery for her death.

SAME.—*Photograph as Evidence.*—It was not error to permit a witness to testify that a photograph introduced in evidence was a correct representation of the crossing and surroundings where the accident occurred.

JUROR.—*Relationship to Counsel.*—*Setting Aside Verdict.*—A verdict will not be set aside because a juror was permitted to serve who was the husband of a niece of the wife of one of the defendant's attorneys.

From the Carroll Circuit Court.

*J. R. Coffroth, T. A. Stuart, F. Gaylord* and *J. F. McHugh,* for appellant.

*W. S. Kinnan, E. C. Field* and *C. C. Matson,* for appellee.

ELLIOTT, J.—The facts, as they appear in the special ver-

dict, are, in substance, these: The track of the appellee crosses a public highway not far from the city of Lafayette. The railroad runs from north to south, and the highway from east to west, but neither runs on a direct line. The track approaches the crossing from the west on a descending grade of about sixty feet to the mile, and the grade of the highway from the south descends to the crossing at about two hundred and fifty feet per mile. On the south side of the railroad, and extending from a point one-half mile west of the crossing to a distance of two hundred and seventy feet of the crossing, there is a hill thirty feet high. A side-track extends along the main track from a point seventeen rods west of the crossing eastward, and beyond the highway. On the 26th day of June, 1886, there were five freight cars, each thirty feet in length, standing on the side-track; one of these cars was a box-car, ten feet high, and the others were platform cars. Beginning at a point in the public highway fifty feet distant in a southeasterly direction from the railroad, was an open space where the track was plainly visible to one travelling on the highway for more than one-fourth of a mile. The crossing was a dangerous one, and the appellant's intestate and her husband passed over it as often as once in every two weeks, and knew that the crossing was a dangerous one. On the 26th day of June, 1886, the intestate was riding with her husband along the highway, and at the time they reached a point within one hundred and fifty feet of the crossing a train was approaching from the west, and was in plain view all the time for a distance westward on the track for more than one-fourth of a mile, but the view of the railroad track was partially obstructed by the freight cars on the side-track. The intestate and her husband were riding in an ordinary farm-wagon, drawn by two horses; the husband drove and managed the team. The whistle was not sounded until the train was within seventy rods of the crossing, nor was the bell rung until after the whistle was sounded. The engineer saw the intestate and her husband when within two hundred

feet of the crossing and sounded the danger signal; but the husband, although he endeavored to urge his horses across the track, failed to succeed in clearing it, and the wagon was struck by the locomotive, and both the husband and his wife were killed. At a point in the highway about one hundred feet from the crossing the intestate's husband apparently checked his horses; the train was then in full view, and the engineer seeing the act of the husband was induced to believe that he was going to wait until the train had passed the crossing. The intestate was "not prevented in any manner, or in any way restrained from looking or listening for an approaching train," and nothing was done by her to warn her husband, nor did she look or listen.

It is quite clear that the husband of the appellant's intestate was guilty of contributory negligence. It is evident from the facts stated in the special verdict that the slightest care on his part would have enabled him to see and avoid the approaching train. But the fact that the driver of a wagon and team which collides with a railroad train is negligent does not necessarily preclude a recovery by one riding in the wagon with such negligent driver. The doctrine of *Thorogood* v. *Bryan*, 8 C. B. 115, has never been sanctioned by this court. *Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186, and cases cited; *Town of Knightstown* v. *Musgrove*, 116 Ind. 121; *City of Michigan City* v. *Boeckling*, 122 Ind. 39. The doctrine has, indeed, been overthrown in England and is repudiated by almost all of the courts of this country. See authorities cited in notes, pp. 630, 632, Elliott Roads and Streets. Rejecting, as we do, the doctrine of imputed negligence, we are, nevertheless, required to hold that there can be no recovery in this action. We are led to this conclusion by the fact that the intestate was not shown to be free from contributory negligence. It has long been the settled law of this State that a plaintiff can not recover in such a case as this unless it affirmatively appears that his own negligence did not proximately contribute to his injury. *Hathaway* v.

*Toledo, etc., R. W. Co.,* 46 Ind. 25; *Toledo, etc., R. W. Co.* v. *Brannagan,* 75 Ind. 490; *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31; *Indiana, etc., R. W. Co.* v. *Greene,* 106 Ind. 279; *Cones* v. *Cincinnati, etc., R. W. Co.,* 114 Ind. 328; *Ohio, etc., R. W. Co.* v. *Hill,* 117 Ind. 56; *Chicago, etc., R. W. Co.* v. *Hedges,* 118 Ind. 5; *Mann* v. *Belt R. R., etc., Co., post,* p. 138.

The fact that there was no contributory negligence may undoubtedly be inferred from circumstances, but to authorize such an inference there must be evidence of circumstances from which the inference can be legitimately drawn. There are no circumstances in this instance authorizing such an inference. The intestate approached a crossing known to her to be dangerous, and approached it when a train was in full view; she took no precautions to warn her husband or to avert the threatened danger, although slight care might have avoided it. While the husband's negligence is not to be imputed to her, she was, nevertheless, under a duty to herself to exercise ordinary care. The rule we adopt is laid down in the well-reasoned case of *Brickell* v. *New York, etc., R. R. Co.,* 120 N. Y. 290.

In the case of *Hoag* v. *New York Central R. R. Co.,* 111 N. Y. 199, it was said, in speaking of a case where the wife was seated in a wagon drawn by a team which her husband was driving, that, "If they did not see it (the train), or, at least, the deceased did not see it, she was negligent, for she was bound to look and listen, and the facts show that if she had looked, she could have seen, and would have seen, the approaching train. She had no right, because her husband was driving, to omit some reasonable and prudent care to see for herself that the crossing was safe." The statement was approved in the later case. This statement applies with great force to the case before us, for here the wagon was stopped, the engineer had reason to believe the husband did not intend to attempt to cross in front of the train, there was no obstruction to the view, and the wife knew that the

crossing was an unusually dangerous one. Under such circumstances she was certainly bound to use her sense of sight and hearing, and to warn her husband by word or act. In the case of Dean v. Pennsylvania R. R. Co., 129 Pa. St. 514 (15 Am. St. R. 733), the same general doctrine is declared, and it is carried somewhat further than we think is warranted by principle or authority. If it affirmatively appeared in this case that no want of care was attributable to the deceased, we should hold that the fact that the negligence of the husband concurred with that of the railroad company in producing the injury, would not bar a recovery, for we understand the law to be well settled that, although the negligence of a third person concurs in producing an injury, still the plaintiff, if free from fault, may recover (Rogers v. Leyden, 127 Ind. 50, and cases cited), but here the plaintiff was not free from contributory fault. There is in our own reports a recent case that we must overrule if we give judgment in favor of the appellant. We refer to the case of Cincinnati, etc., R. W. Co. v. Howard, 124 Ind. 280. In that case a daughter was riding in a buggy drawn by a horse driven by her father, and it was held that the trial court erred in refusing to give an instruction reading thus : " The burden is on the plaintiff to show, by a preponderance of the evidence, that she and her father vigilantly used their eyes and ears to ascertain if a train of cars was approaching, and if this has not been shown to you by a preponderance of the evidence, the plaintiff can not recover." This is an unequivocal assertion of the rule we have stated, and we can not, in view of the authorities, declare that the decision, in the case cited, is not the law ; on the contrary, we think it correctly states the law upon the point under consideration. It is true that some of the expressions found in the opinion are opposed by earlier as well as later cases, and such expressions must be deemed erroneous, but they do not bear upon this point.

We do not undertake to lay down a general rule which shall apply to all cases of this class ; we simply adjudge that,

upon the facts stated in the special verdict, it can not be assumed that there was no contributory negligence on the part of the deceased, or that there was any fact excusing her failure to exercise such care and vigilance as the law requires.

The other questions in the case arise on the motion denying a new trial.

There was no error in permitting a witness to testify that a photograph introduced in evidence was a correct representation of the crossing and its surroundings. *Keyes* v. *State,* 122 Ind. 527.

A witness for the appellee was permitted to state what was said by him, at the time the whistle was sounded, to a lady passenger on the train with him. We need not and do not decide whether this evidence was competent for the purpose of enabling the witness to fix the time when he heard the whistle, for, granting that it was incompetent, still there can be no reversal of the judgment, inasmuch as the jury found for the appellant upon the question to which the evidence was directed, and hence it is obvious that if there was error it was harmless.

Appellant asks a reversal upon the ground that the appellee knowingly permitted a juror to serve who was the husband of a niece of the wife of one of the appellee's attorneys. The contention of appellant can not be sustained. Such a relationship of a juror to one of the counsel can not, under the long existing rule, be deemed cause for setting aside a verdict. Thompson and Merriam Juries, 181.

Judgment affirmed.

Filed April 21, 1891.