## Grand Trunk Western Railway Company *v.* Reynolds, Administratrix.

[No. 21,767.   Filed October 27, 1910.   Rehearing denied February 2, 1911.]

1. RAILROADS. — *Highway Crossings.* — *Travelers.* — *Looking and Listening.*—It is the duty of a traveler approaching a railroad crossing to look and listen for an approaching train, and if necessary to his seeing and hearing, it is his duty to stop.   p. 165.

2. RAILROADS.—*Highway Crossings.—Travelers.—Ability to See or Hear Train.—Care.—Jury.*—Whether a traveler approaching a highway crossing could see or hear an approaching train, and whether he used ordinary care, are questions for the jury. pp. 166, 173.

3. TRIAL.—*Interrogatories.—Inferences.*—Answers to the interrogatories to the jury are not aided by inferences or presumptions. p. 166.

4. TRIAL.—*Interrogatories. — Railroads. — Highway Crossings. — Travelers.—Care.—Inferences.—General Verdict.*—Answers to interrogatories that decedent, as he approached the railroad crossing, looked and listened, imply that he knew of the crossing, and that he looked and listened from a proper position to ascertain the approach of a train, a general verdict for the plaintiff forbidding the assumption that he saw and heard the approaching train; and from an answer that the headlight of an approaching train was visible, and that he looked and listened, an inference might arise that he knew the train was there, or that the visible light was some other kind of a light, the proper inference being a question for the jury.   pp. 167, 168.

5. RAILROADS.—*Highway Crossings.—Interrogatories.—Verdict.* — Answers to the interrogatories to the jury showing that decedent was attempting to cross a railroad track, that the track ran through a deep cut, that he looked and listened for an approaching train, that his vision and hearing were obstructed by the embankment along the cut, that the whistle was not sounded nor was the bell rung for the crossing, that the train was running noiselessly fifty miles an hour and that it killed decedent on the crossing, are not in irreconcilable conflict with a general verdict for the plaintiff. p. 167.

6. TRIAL.—*Interrogatories.—Evidence.—Consideration of.*—On a motion for judgment on the answers to the interrogatories to the jury the evidence cannot be considered. p. 168.

7. RAILROADS.—*Highway Crossings.—Signals.—Question for Jury.* —Where five employes of defendant railroad company affirmatively testified that the statutory crossing signals were given at the crossing whereon plaintiff's decedent was killed, and two disinterested residents of the neighborhood testified that they could have heard the signals, if given, but heard none, the question of the giving of the signals was properly left to the jury. p. 168.

8. TRIAL.—*Jury.—Inferences.*—A jury may draw reasonable inferences from the facts proved. p. 171.

9. RAILROADS.—*Highway Crossings.—Negligence and Contributory Negligence.—Presumptions.*—Though a traveler killed by a train upon a highway crossing is not presumed guilty of contributory negligence, the burden of proving such negligence being upon the defendant, still he is not presumed to be free from fault; and in the absence of proof, the company has merely failed to prove its affirmative defense. *Southern Ind. R. Co.* v. *Peyton,* 157 Ind. 690, explained. *Nichols* v. *Baltimore, etc., R. Co.,* 33 Ind. App. 229, and *Pittsburgh, etc., R. Co.* v. *Reed,* 36 Ind. App. 67, partly disapproved. p. 171.

10. RAILROADS.—*Highway Crossings.—Presumptions as to Seeing Trains.*—There is a disputable presumption that a traveler approaching a railroad crossing saw a visible train, but such presumption may be overthrown by circumstances justifying a failure to see such train. p. 173.

11. APPEAL.—*Weighing Evidence.*—Where there is some evidence tending to support the material allegations of the complaint, a judgment for the plaintiff will not be reversed for want of evidence. p. 173.

12. RAILROADS.—*Highway Crossings.—Interrogatories.—Visibility of Train.*—An answer to an interrogatory that the decedent, when forty-seven feet from the track and continuously until he reached the crossing, could have seen the headlight of an approaching

train eighty rods away, does not authorize an inference that he could have seen such headlight within the distance of eighty rods.   p. 174.

From Porter Circuit Court; *W. C. McMahan*, Judge.

Action by Charlotte Reynolds, as administratrix of the estate of William Reynolds, deceased, against the Grand Trunk Western Railway Company. From a judgment on a verdict for plaintiff for $3,500, defendant appeals. Transferred from Appellate Court under §1394 Burns 1908, subd. 2, Acts 1901 p. 565, §10. *Affirmed.*

*Johnston & Bartholomew* and *Kretzinger, Rooney & Kretzinger*, for appellant.

*Grant Crumpacker* and *William Daly*, for appellee.

MYERS, J.—This is an appeal from a judgment awarding damages to appellee for the alleged negligent killing of her decedent at a highway crossing over appellant's railway.

The errors relied on are, overruling the motion for judgment upon the answers to the interrogatories, and overruling the motion for a new trial.

The pertinent portions of the complaint, necessary to an understanding of the ruling on the motion for judgment upon the answers to the interrogatories are, that the railroad crossed a highway at right angles; that at the point of crossing, and for a long distance east, the railroad runs through a deep cut, and a train approaching the highway from the east could not be seen by a traveler coming from the north until he got upon the track; that banks twenty-five to thirty feet high lay along the cut of said road for a distance of one and one-half miles east, and obstructed any view of trains; that the track from one mile east of the crossing to some distance west thereof was down grade; that while decedent was approaching the railroad crossing from the north, in a light wagon drawn by one horse, a locomotive on defendant's road was approaching the crossing from the east; that defendant negligently failed to ring the bell or blow the whistle, when within a distance of one hundred twenty

rods of said crossing, and negligently ran said locomotive at a high and dangerous rate of speed, viz., ninety miles an hour; that the train was running in a cut and made little noise; that decedent was unable to see, and did not see nor hear the train, and had no knowledge or the approach thereof until it was too late to avoid a collision; that his vehicle was struck by the locomotive, and the horse and decedent were then and there and thereby instantly killed; that decedent was so killed on the highway at the crossing of defendant's track, while he was lawfully on said highway; that he did not discover and could not have discovered the approach of said locomotive in time to avoid the collision; that had the bell been rung and the whistle blown within a distance of one hundred twenty rods of the crossing, decedent could and would have heard it and would have avoided the injury.

The interrogatories and the answers thereto show that the accident occurred at 8:35 o'clock p. m., October 7; that the right of way was 100 feet wide, with a single track in the center, crossing the highway at right angles on a level; that the engine was equipped with the ordinary headlight, ten feet nine and one-half inches above the track; that said headlight was lighted; that decedent at the time of the accident was in a covered wagon, with side curtains extending to the front line of the seat; that the horse was gentle and easily managed; that decedent was accustomed to driving; that the night was clear, and there was no wind; that decedent's hearing and eyesight were good; that he could read; that there was a sign "Railroad Crossing" in big letters at the crossing; that decedent was thirty-nine years old; that if decedent in approaching the crossing on this occasion, at a point in the highway forty-seven feet north of the track, had looked east, he could have seen the headlight of the engine for a distance of eighty rods, and thence continuously as he approached the crossing he could have seen it for that distance or more; that the track was on

a straight line 1,200 feet east from the crossing; that the danger-signal was sounded six or eight rods from the crossing; that decedent's horse was then ten or twelve feet from the track; that no whistle was sounded or bell rung for the crossing; that it was not light enough for persons passing decedent to see him; that the track enters a cut ten rods east of the highway crossing; that twenty-five rods north of the track decedent could not have seen the approaching train or the headlight; that he could not have seen the headlight when he was within one hundred feet north of the track, nor could he have heard the noise of the train a distance of eighty rods; that the train consisted of an engine, tender and caboose, and was running down a grade of fifty-two feet to the mile, at a speed of fifty miles an hour; that as he approached the crossing he looked and listened for an approaching train; that if he had looked from a point 100 feet north of the crossing he could not have seen the headlight or the approaching train 627 feet away; that the highway for 400 feet north of the crossing is about the same elevation as at the crossing, and that there was nothing to obstruct the view of the approaching train, except the elevation on the side of the track. The depth of the cut is not stated.

The interrogatories and answers do not disclose whether appellee's decedent knew of the existence of the railway crossing at that point, or where the signpost was located; nor do they disclose whether he could see such post.

Under these facts, appellant urges that the interrogatories and answers prove that the injury was the result of decedent's want of care. It is the duty of one approaching a highway crossing to look and listen; and, if necessary to see and hear, it is his duty to stop. But the jury found the conditions surrounding the crossing; that the statutory signals were not given; that decedent could not have heard the noise of the train a distance of eighty rods; that at a point twenty-five rods north of the crossing he could not have seen the train 462 feet from the crossing;

that at a point 100 feet from the crossing he could not have seen the headlight or the train over 627 feet; that forty-seven feet north of the track he could have seen the headlight eighty rods; that when the train was running fifty miles an hour and decedent was traveling three miles an hour the train would run seventy-three and thirty-three one-hundredths feet a second, and decedent would travel four and four-tenths feet; that the track was straight for a distance of 1,200 feet, implying a curve beyond that point; that from the time he got within forty-seven feet of the crossing, when the headlight could be seen, he could not see farther than the train would move in less than eighteen seconds; that if he had passed the point where the train came into view, and possibly within hearing, he was practically upon the track, or in such situation that, without the signals to warn him, he could not escape either by going forward or by stopping; that with a locomotive, tender and caboose, running down a grade of fifty-two feet to the mile, the locomotive would necessarily not be laboring, and comparatively little noise would be made.

Sound travels differently in different media or states of the atmosphere, and is affected by obstructions, and while it is said to travel 1,090 feet each second, whether 2. the conditions were such that the sound would travel in the direction of decedent, so as to give warning of an approaching train, we cannot know. It may have been that the conditions for hearing were no better than for seeing, and, so far as this motion is concerned, there may have been evidence from which the jury was warranted in finding, as it did by the general verdict, that decedent exercised ordinary care, under all the circumstances disclosed by the 3. evidence, and the answers to the interrogatories are not aided by inference or presumptions. *Southern R. Co.* v. *DePauw* (1910), 174 Ind. 608.

The jury found that in approaching the crossing decedent looked and listened, implying knowledge of the existence

4. of the crossing, and this finding, for the purposes of this motion, considered with the general verdict, must be taken to mean that he looked and listened from a position where looking and listening would be of avail, and we cannot assume, as against the general verdict, that he could have seen or heard the coming train. From the finding that the headlight of an approaching train would have been visible, with the finding that he looked and listened, there might arise an inference that he knew the train was coming. But other inferences might reasonably arise, such as that it was a switch light, or something other than the headlight of an approaching train. Or, put in another form, seeing a light might lead to an inference of a coming train, but is not conclusive, and might present but a slight inference, if no signals were given, or none heard. For us to infer that he knew, or was bound to know, that it was the headlight of an approaching train, would require us, irrespective of all conditions which may have been disclosed by the evidence, to say that he must have seen or heard, or was bound to see and hear, in time to stop or to pass to safety. He may not have been familiar with the crossing, or not have been aware of its presence, and the conditions may have been such that he could hear neither the crossing signal nor the noise of the train.

5. The complaint alleges the existence of banks twenty to thirty feet high along the cut of the railway for a distance of one and one-half miles east of the crossing, which cut off any view of the train; that the train made little noise, and the decedent was unable to see or hear the train, and had no notice or knowledge of the approach of the train, and that he could not have discovered its approach in time to escape the collision. Whether these allegations were proved by the evidence, was a question for the jury, and the answers to the interrogatories are not so antagonistic to the general verdict, which covered all the elements essential to a recovery, as to authorize a judgment for appellant.

We cannot supply by inference, presumption or intendment, so important a fact as that decedent knew that the visible light was the headlight of an approaching train, when there is no fact found showing that decedent knew the fact, or even that he should have known it, for the reason that on this motion we cannot look to the evidence, and cannot know the related facts and circumstances which may have been in evidence, in explanation of his failure or possible inability to know the fact. *Owen Creek, etc., Church* v. *Taggart* (1909), 44 Ind. App. 393; *Freitag* v. *Chicago Junction R. Co.* (1910), 46 Ind. App. 491; *Chicago, etc., R. Co.* v. *Wilfong* (1910), 173 Ind. 308; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438; *Farmers, etc., Ins. Assn.* v. *Stewart* (1906), 167 Ind. 544; *Indianapolis St. R. Co.* v. *Hockett* (1903), 161 Ind. 196; *Stoy* v. *Louisville, etc., R. Co.* (1903), 160 Ind. 144; *Clear Creek Stone Co.* v. *Dearmin* (1903), 160 Ind. 162; *McCoy* v. *Kokomo R., etc., Co.* (1902), 158 Ind. 662; *Chicago, etc., R. Co.* v. *Stephenson* (1904), 33 Ind. App. 95.

Upon the motion for a new trial, presenting the questions of the sufficiency of the evidence to show negligence and contributory negligence, appellant urges that some negligent act or omission which caused the injury, must affirmatively appear, and the specific statement presented is, that while the complaint alleges negligence in failing to give the statutory signals, we must be governed by the affirmative evidence of five employes on the train that the signals were given, because it is affirmative, as against the evidence of two other persons that they heard no signal until the danger signal was sounded, which two persons were situated so that they might have heard the signals if given, and who gave details of what they heard, the contention being that affirmative testimony must be given greater weight than negative testimony. The engineer testified that when he first saw decedent's horse and wagon, the train was from six to ten rods from the crossing, and the horse from six to ten

feet from the track; that he gave the danger signal, reversed his engine, turned on the sand valve as quickly as he could, and did his best to stop the train; that it ran ninety rods beyond the crossing before he could stop; that the horse was not injured, and that the wagon was carried quite a distance on the pilot, showing that decedent was practically on the track when he was discovered by the engineer.

Sarah Carver, who resided about ten rods south of the crossing, on the west side of the highway, in a house fifty feet from the highway, where she had lived for thirty-five years, testified that she was at home at the time of the accident. She heard a crash and heard a whistle at the same time. She did not hear any whistle before that time, but heard the whistle and the crash at the same time. She did not hear the bell. The railroad had been there about twenty-six years, and many trains were run over it each way every day. Her hearing was very good. The whistle and the crash were close together—she thought at the same time. She went to tell her husband, and he had already started. She and her husband were alone in the house. There was no noise around the house. The kitchen door, at the northwest side of the house, was open. Said witness was sitting at a table.

James O'Connor, thirty-five years old, a farmer living in a house where he was born and reared, situated about fifty rods north of the crossing, and on the east side of the highway, was at home at the time of the accident. Looking from his house after the accident he saw the engine about ninety rods west of the crossing. He heard the train as it passed over the crossing, and he heard " three short, shrill blasts, and then came a thump." Very little time elapsed between the whistle and the bump. " They hardly quit whistling, when it hit him." He did not hear any whistle before that time, and he did not hear any bell at any time, as said train approached the crossing. To the question " Was any whistle blown? " he answered " No, sir." He further testified that

there were two hills through which the railroad ran, east of the crossing, with a ravine between them. Standing near his porch, which was higher than the wagon road, he could see the tops of the cars, if they were in the ravine. On cross-examination he testified that he was not paying any attention to this train until he heard it whistle; that trains sometimes went through there and whistled without his paying any attention to them; that he did not hear this train whistle for the crossing eighty rods back. When asked, " But you do not say that it did not whistle, do you? " he answered, " No, sir." He said that the danger whistle probably would attract his attention more quickly than an ordinary whistle. On reëxamination he testified that he heard the first blast of the whistle, that he heard it before he knew it was a danger signal, and that he knew what the crossing signal was—that it was four blasts, two long and two short.

The force and effect of this evidence was a question to be determined by the jury. It might to some minds leave doubt as to whether the signals were omitted, but to others it might furnish conviction that they were not given; but however that may be, that was a question solely for the jury, and we cannot determine for a jury what weight should be given to any evidence of·a witness over the evidence of any other witness. *Board, etc.,* v. *Garrigus* (1905), 164 Ind. 589; *Ohio, etc., R. Co.* v. *Buck* (1892), 130 Ind. 300; *New York, etc., R. Co.* v. *Robbins* (1906), 38 Ind. App. 172.

There are cases that hold that the testimony of witnesses, who are in a position to hear, that they heard no signals, is not negative evidence in the sense that it is testimony of witnesses who did not know whether signals were given or not. *Cleveland, etc., R. Co.* v. *Wuest* (1907), 40 Ind. App. 693; *New York, etc., R. Co.* v. *Robbins, supra; Voak* v. *Northern Cent. R. Co.* (1878), 75 N. Y. 320; 6 Thompson, Negligence (2d ed.) §7865, and cases cited.

A jury may draw reasonable inferences from facts proved. *Hill* v. *Hill* (1910), 45 Ind. App. 99; *Cleveland, etc., R. Co.* v.

*Van Natta* (1909), 44 Ind. App. 608; *Chicago, etc., R. Co.* v. *Vandenberg* (1905), 164 Ind. 470; *Toledo, etc., R. Co.* v. *Fenstermaker* (1904), 163 Ind. 534; *Princeton Coal, etc., Co.* v. *Roll* (1904), 162 Ind. 115; *Cleveland, etc., R. Co.* v. *Wuest, supra; Indianapolis St. R. Co.* v. *Taylor* (1907), 39 Ind. App. 592.

For example, in this case it is a reasonable inference that, with decedent as near to the track as he was, and struck as he was, if a shrill whistle had been blown or the bell rung, or both as the statute requires, on a clear night, he would have heard in time to place himself in safety. At any rate, we cannot usurp the functions of the jury and determine a question upon which there was competent evidence both ways.

Appellant contends that it appears from the evidence that decedent was guilty of contributory negligence. This contention is based upon the claim that it is the duty of a traveler approaching a railway crossing to look and listen, and that if he can see or hear an approaching train in time to escape injury, it is presumed either that he did not look or listen, or that he did not heed what he saw or heard.

In *Nichols* v. *Baltimore, etc., R. Co.* (1904), 33 Ind. App. 229, it was correctly held that there is no presumption that one injured at a highway crossing was negligent, because the burden of showing negligence is upon defendant; but it was incorrectly held that the presumption is that he was without fault.

If a traveler is injured at a railway crossing, there is no presumption, in the absence of evidence, either for or against negligence. The traveler is not aided by a presumption of freedom from fault, nor the railway by a presumption of contributory negligence. It is simply a failure of proof upon the part of the railway as to an issue, the burden of showing which is by statute cast upon it. The question is clearly presented in the cases of *City of Indianapolis* v. *Keeley* (1906), 167

Ind. 516, and *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697.

In *Southern Ind. R. Co.* v. *Peyton* (1902), 157 Ind. 690, the question arose upon a demurrer to the complaint, the point being made that there was no averment that the engineer before crossing another railway track stopped his train, and looked and listened before attempting to cross. It was not necessary that plaintiff should aver his freedom from contributory negligence. If it was negligent for him to fail to stop, look and listen, that was a matter of defense, a matter of proof under all the evidence, and there is no room for presumptions. The court there said that " if any presumption will arise from the absence of an averment as to the fact, it must be that he did stop it." As it was an unnecessary allegation, in any view of the case, it was unnecessary to suggest any question of presumptions, and the opinion on the whole is not open to the interpretation that it holds that there is a presumption that he did stop.

For the reasons pointed out, the holding in the cases of *Nichols* v. *Baltimore, etc., R. Co., supra,* and *Pittsburgh, etc., R. Co.* v. *Reed* (1905), 36 Ind. App. 67, that the presumption is that a traveler on a highway crossing exercised due care, and was free from contributory negligence, is erroneous. It is true that in *Malott* v. *Hawkins* (1902), 159 Ind. 127, it is said with reference to the statute's casting the burden on the defendant of showing contributory negligence, that " it does not change the rule that it is presumed that the traveler saw and heard, or was heedless of, that which, as an ordinarily prudent man, he ought to have taken notice of."

In the case of *Lake Shore, etc., R. Co.* v. *Brown* (1908), 41 Ind. App. 435, it was held, affirming the statement from *Chicago, etc., R. Co.* v. *Hedges* (1889), 118 Ind. 5, that " the law presumes that one having the ordinary sense of sight must have seen that which was within the range of his vision." The statement is doubtless correct as applied to

those cases, for in each of them there was a finding that the injured person was so situated that he could see the train in time to escape injury, with nothing to excuse his failure to look and see, and in such cases there is a presumption that he saw or heard what it is manifest that he could have seen or heard.

But the rule declared is not one that applies irrespective of the evidence, or without evidence. To invoke it, there must be evidence of circumstances showing that a failure to see and hear was caused by a failure to use those senses under conditions where seeing or hearing, or both, were available to give notice in time to avoid injury. *Malott* v. *Hawkins, supra; Wabash R. Co.* v. *Keister* (1904), 163 Ind. 609; *Pittsburgh, etc., R. Co.* v. *Seivers* (1904), 162 Ind. 234; *Stewart* v. *Pennsylvania Co.* (1892), 130 Ind. 242; *Elliott* v. *Chicago, etc., R. Co.* (1893), 150 U. S. 245, 37 L. Ed. 1068, 14 Sup. Ct. 85; *Stoy* v. *Louisville, etc., R. Co.* (1903), 160 Ind. 144.

The jury found that decedent looked and listened as he approached the crossing. No one saw him approaching the crossing except the engineer, and that was when decedent was practically upon the crossing. There was no direct evidence that he looked and listened. But if that finding be disregarded, we cannot assume, as against the general verdict, that there was evidence that he could see or hear, or that looking or listening would have been available, or that he did not, under the facts and circumstances shown, use ordinary care.

It is urged that decedent is shown by the evidence to have been acquainted with the crossing. Conceding that to be true, the question still resolves itself into one of ordinary care in passing it, under the conditions and surroundings.

There is much conflict in the evidence upon all the controlling questions, and we are not authorized to overthrow the verdict and judgment because of the alleged insufficiency of the evidence to support the verdict. The judgment is affirmed.

## On Petition for Rehearing.

Myers, C. J.—Appellant upon its petition for a rehearing takes the position that the finding of the jury upon the answer to the interrogatories, that " if decedent in 12. approaching the crossing on this occasion had, at a point in the highway forty-seven feet north of the track, looked east he could have seen the headlight of the engine for a distance of eighty rods, and thence continuously as he approached the crossing he could have seen it for that distance or more," excludes the supposition that decedent might have thought the headlight to be a switch light, or other light than that of an approaching engine, and is a finding of contributory negligence on the part of decedent. We point out again that it is alleged in the complaint " that at the point of crossing, and for a long distance east, the railroad runs through a deep cut, and that a train approaching the highway from the east could not be seen by a traveler coming from the north until he got upon the track; that banks twenty-five to thirty feet high lay along the cut of said road for a distance of one and one-half miles east, and cut off any view of the trains." The jury found that the railroad enters the cut ten rods east of the highway, and from different points, at short intervals of space, the train could not be seen at all, and from others for only short distances. In view of these allegations and findings, What is the force and effect of the finding to which appellant's learned counsel address their urgency? It is not, it will be seen, a finding that the approaching train could have been seen continuously from a point eighty rods east as it came west from the time decedent was at a distance of forty-seven feet from the track, but that from that point a headlight could be seen eighty rods and more. But what of the space between the crossing and eighty rods east. It is clearly not a finding that it could be seen continuously as it approached when within eighty rods of the crossing.

Decedent might have been able to see it eighty rods and more away, had it been there. But suppose it was within the eighty rods. We cannot infer, in view of the allegations of the complaint as to the obstructions, that decedent was bound to see it within eighty rods.

Appellant's construction is that decedent could see the headlight continuously within the eighty rods, but that is not the finding. The finding is, that the train would have been visible to decedent at and beyond a point eighty rods from the crossing continuously as he approached such crossing, if such train had been at or beyond such point, and not that it could have been seen as it approached when within the eighty rods, and it is equally clear under the finding that the train was considerably within the eighty rods; so that notwithstanding the obstructions, as alleged, we would be bound, in order to overthrow the general verdict, to infer that he could have seen it within the eighty rods, which we cannot do. Careful reconsideration of the question confirms us in our original opinion. The petition for a rehearing is overruled.