UNION TRACTION COMPANY OF INDIANA *v*. HAWORTH.

[No. 22,981. Filed April 4, 1917. Rehearing denied June 19, 1918.]

1. APPEAL.—*Review.*—*Verdict.*—*Inferences from Evidence.*—In determining the sufficiency of the evidence to support the general verdict, the true rule requires the court on appeal to look not only to the evidence but to such inferences as the jury might fairly draw supporting the verdict. p. 458.

2. NEGLIGENCE.—*Imputed Negligence.*—In an action for personal injuries sustained by the plaintiff, a passive guest in an automobile, the negligence of the driver of the automobile cannot be imputed to the plaintiff. p. 458.

3. NEGLIGENCE.—*Crossing Accident.*—*Care Required.*—The plaintiff, a passive guest in an automobile, who was injured in a collision with an interurban car at a crossing, was not exempt from exercising ordinary care to avoid danger. p. 458.

4. NEGLIGENCE.—*Contributory Negligence.*—*Question of Law or Fact.*—*Crossing Accident.*—To warrant the court to hold as a matter of law that the plaintiff was guilty of contributory negligence, the evidence upon the question must be so convincing that reasonable minds can honestly come to but one conclusion; hence, in an action for injuries sustained in a railroad crossing accident, where the evidence was not of such convincing character, the question was one of fact, and the court on appeal will not disturb the jury's verdict. pp. 459, 460.

5. RAILROADS.—*Crossing Accident.*—*Duty to Look and Listen.*—The rule requiring one approaching a railroad crossing to look and listen does not apply where there is no evidence showing that looking and listening would have given notice in time to avoid the accident. p. 460.

6. TRIAL.—*Instructions.*—*Cure of Error by Other Instructions.*—An instruction that the plaintiff must prove all the material allegations of her complaint, and that her injuries were due to one or more of the acts of negligence charged, if erroneous for failure to state that the negligence must be the proximate cause of the injury, was cured by the giving of another instruction that fully covered the omitted point. pp. 461, 466.

7. TRIAL.—*Instructions.*—*Cure of Error by Other Instructions.*—
An instruction that contributory negligence is the failure of
the person injured to use ordinary care for her safety, is not
defective for failure to include negligence by omission, where
another instruction stated that ordinary care required the plain-
tiff to use her faculties to discover and avoid danger.   p. 462.

8. TRIAL.—*Instructions.*—*Cure of Error by Other Instructions.*—
An instruction that, if the negligence of the driver of an auto-
mobile, in which the injured plaintiff was riding, concurred
with the negligence of the defendant, and was the proximate
cause of the injury, the negligence of the driver could not be
imputed to the plaintiff, is not objectionable as assuming that
the defendant was negligent, where it was supplemented by
another instruction that plaintiff could not recover unless the
defendant was negligent as charged and its negligence was the
proximate cause of the injury.   p. 462.

9. RAILROADS.—*Crossing Accident.*—*Look and Listen.*—One ap-
proaching a railroad at a crossing is not required as a matter
of law, under all circumstances or conditions, to look or listen
at a particular time, in a particular direction, or from a par-
ticular place.   p. 463.

10. TRIAL.—*Refusal of Requested Instructions.*—*Harmless Error.*
—It is not error to refuse a requested instruction that was
fully covered in other instructions given.   p. 464.

11. RAILROADS.—*Crossing Accident.*—*Warning Signals.*—*Statute.*
—The failure to give signals required·by the law at a railroad
highway crossing cannot be excused on the ground that other
warning signals were given.   p. 464.

12. RAILROADS.—*Crossing Accident.*—*Duty to Look and Listen.*—
Where two interurban cars passed a highway crossing so close
together that the noise of the first, which had passed, drowned
the noise of the second, the duty of one approaching the cross-
ing whose attention was distracted from the second car is
measured by the degree of care an ordinarily prudent person
would exercise under like circumstances and not by the strict
rule ordinarily applicable to persons approaching railroad cross-
ings.   p. 465.

From Clinton Circuit Court; *Joseph Combs;* Judge.

Action by Julia C. Haworth against the Union Trac-
tion Company of Indiana.   From a judgment for plain-
tiff, the defendant appeals.   *Affirmed.*

*James A. Van Osdal, Sheridan & Grueber,* and *Mat-
son, Kane & Ross,* for appellant.

*Christian & Christian, Strawn & Robinson* and *Wymond J. Beckett,* for appellee.

MYERS, J.—Appellee brought this action in the Hamilton Circuit Court against appellant to recover damages for personal injuries sustained in a collision between one of appellant's interurban cars and an automobile in which she was riding. The collision occurred on September 10, 1913, at 5:30 in the afternoon, at a highway grade crossing. The venue was changed to the Clinton Circuit Court, where a trial resulted in a verdict and judgment in favor of appellee for $15,000.

From this judgment appellant appealed to this court, and the only error here relied on is the action of the trial court in overruling its motion for a new trial, which contains seventy-one specifications. The first two reasons are: That the evidence is insufficient to sustain the verdict, and that the verdict is contrary to law.

Appellant insists, first, that the uncontradicted evidence shows affirmatively that appellee was guilty of contributory negligence proximately contributing to her injury.

The acts of negligence charged in the complaint are in substance: (1) That appellant negligently ran its car at a high and dangerous rate of speed towards and upon the crossing where the accident occurred, and negligently struck the automobile in which appellee was riding, and thereby negligently injured her. (2) That appellant negligently ran its car at a high and dangerous rate of speed, to wit, sixty miles an hour, within 500 to 1,000 feet behind another of its cars, upon the same track and in the same direction, without giving any notice to appellee of so running its car, and negligently ran said second car against the automobile in which appellee was riding, thereby negligently injuring her. (3) That appellant negligently ran its second car

towards said crossing and against said automobile upon said crossing, and negligently failed to give any signal of its approach not more than 100 rods nor less than eighty rods from the crossing where the accident happened, and negligently injured appellee.

It appears from the evidence that at the time of the accident appellee and her husband were riding in an automobile as the guests of their neighbors, Mr. and Mrs. Waltz, and without any authority to direct or control the machine or driver thereof. The machine was working splendidly, and was under full control of Mr. Waltz, who was carefully driving it. The top of the automobile was up, but there were no side curtains. The automobile party was returning to their home at Noblesville from Indianapolis over a public highway running north and south which crossed appellant's track running southwest and northeast 258 feet north of another public highway running east and west, known as the Carmel road. The east and west road crossed appellant's track at grade 625 feet southwest of the crossing where the accident happened, and is known as Gray's stop. The physical features of the vicinity north of the east and west road and east of the north and south road are substantially as follows: The ground rises gradually to the north and east. From the center of the north and south highway on the south line of the right of way northeast, parallel with the track, 170 feet, the ground is five and one-half feet higher than the highway. From this high point south, the ground rises to a point near a church, which is about 150 feet east of the north and south road. On this ground is located a cemetery with a large number of tombstones scattered over it. From the center of the railroad track along the center of the highway south to a point opposite the northwest corner of certain hitching sheds is 27.4 feet. These sheds are eleven feet high, extending north and south along the

highway 71½ feet, and next to the road they were completely boarded up. From the sheds to the railroad track, with the exception of two or three feet next to the sheds and about six feet of fence next to the track usually found at railroad crossings forming cattle guards, there was a plank fence five boards high. Appellant's track east of the point of the accident is laid in a cut and practically on an elevation with the highway for something like 200 feet, where the ground, as well as the track, gradually slopes downward to the east about 400 feet to a culvert over a small stream. As one approaches the track from the south line of the right of way it becomes more difficult to see between the poles; and there is a point where the poles conceal the track as would a solid wall. The poles were practically 100 feet apart.

Further, the evidence tends to show that when the party reached the Carmel road-Waltz put his machine in low gear, and while continuing north toward the crossing they heard a car whistle, and in four or five seconds another whistle, and as the machine reached the right of way the car passed. Haworth, husband of appellee, testified that when he heard the whistle he could not see anything on account of the hill and, when they reached the point where he could see, he looked east but did not see a car, then to the west at the car which had just passed until it had obstructed his view to about half of the little station building to the southwest. He then turned his head to the east, and the car that struck them was so close that he could not see the top of it from under the top of the automobile; that after the first car passed he heard no whistle of any car to the east, and the automobile was running slowly, just barely moving, not over two miles per hour, and they were then about twenty-five to twenty-seven feet from the track. After the first car passed, Waltz speeded the automobile up to about

four miles per hour, which was about the speed of the machine when it was struck. Appellee was riding in the rear seat with Mrs. Waltz, and on the right side of the automobile. On the west side of the road was a post on which were cross-arms, and painted thereon the words "Railroad Crossing" in black letters about three and one-half inches long, and on a board below, in red letters, the word "Danger," which could be seen by persons approaching the crossing from the south. Appellee testified that it was her first trip over the crossing, and nothing was said about their approaching it, nor did she know of it, although they passed there that morning. Her first knowledge of an interurban track at that point was when she saw the first car go by. She watched it and listened, and heard nothing but that car, and did not see the car that struck them. The first car had not reached Gray's crossing before the second car collided with the automobile. The first car made considerable noise, and she heard no whistle to her right. She did not remember seeing the church building or fences along the road, and after the first car passed she remembers nothing until after she was in the hospital. There is positive conflict in the evidence, not only as to whether or not the whistle on the second car was sounded at not more than 100 rods or less than eighty rods east of the north and south road crossing, but whether it was sounded at the first whistling post east for the first or Gray's crossing to the west. A witness who was husking corn within sixty-five steps of the crossing when the collision occurred, and on the south side of the track, heard the first car whistle for the crossing and in ten or fifteen seconds after that car passed him he heard the crash of the collision. He thinks the first car was running at a speed of from fifty to sixty miles per hour. The evidence as to the speed of the second car ranges from thirty-five to sixty miles per hour.

The following diagram will aid in better understanding the facts.

Appellant contends that the evidence in this case shows affirmatively that appellee was guilty of contribu-

tory negligence proximately contributing to her injury; and this contention is grounded largely, it may be said, upon the testimony of appellee. Appellant's statement of the law in the abstract is correct. The decision of this case depends upon the application of the settled rules of law to the disputed and undisputed evidence. In this regard the true rule requires that we look not only to the evidence but to such inferences as the jury might fairly draw supporting the general verdict. *Southern Product Co.* v. *Franklin Coil Hoop Co.* (1914), 183 Ind. 123, 106 N. E. 872.

In this case the negligence, if any, of Waltz, the driver of the vehicle, cannot be imputed to appellee, who was a passive guest. *Miller* v. *Louisville, etc., R. Co.* (1891), 128 Ind. 97, 99, 27 N. E. 339, 25 Am. St. 416; *Indiana Union Traction Co.* v. *Love* (1913), 180 Ind. 442, 99 N. E. 1005; *Wabash R. Co.* v. *McNown* (1912), 53 Ind. App. 116, 99 N. E. 126, 100 N. E. 383; *City of Gary* v. *Geisel* (1915), 59 Ind. App. 565, 108 N. E. 876; *Schultz* v. *Old Colony Street R. Co.* (1907), 8 L. R. A. (N. S.) 597, note. While this is true, yet appellee was not exempt from the exercise of ordinary care to avoid danger. Her duty as to care, then, was that of an ordinarily prudent person under like circumstances and situation at the time of the injury. *Miller* v. *Louisville, etc., R. Co. supra.*

The evidence tends to prove that both cars were running at the rate of fifty to sixty miles per hour, and that the first car had about reached Gray's stop when the second car collided with the automobile. The jury might readily conclude from that fact that the cars were running approximately 625 feet apart. If that be true, when the first car was on the crossing the second car was approaching the low part of the road east, and from the highway beyond the high point of the land, and was near the concrete arch and west of the whistling

post. At the time the first car passed over the crossing the automobile was supposed to be from twenty-five to thirty feet south of the track, and immediately after the passing of the car its speed was increased to about four miles per hour, and should have reached the track in about five seconds. During this time, if the second car was running fifty miles per hour, it would travel about 365 feet, or, in other words, it would travel from near the low place in the track up over the high point and on to the road crossing. From the time the first car passed it was difficult for the automobile party, as it proceeded, to see an oncoming car at any time during the five or ten seconds just prior to the accident and, at one point near the track, the car was not visible at all, for the reason, as we have seen, that it was completely hidden by trolley poles. At the assumed rate of speed— 50 miles per hour—it would take the interurban car less than two and one-half seconds to cover the distance between the crossing and the high point in the road east, and during which time the automobile would travel approximately twelve feet.

The accident resulting in appellee's injury was brought about by two concurrent acts of two parties. Appellee charges that certain alleged negligence 4. of appellant was the proximate cause of the collision and of her injury; while appellant contends that the negligence of appellee contributed to the result. Thus two issues were presented as questions of fact which were submitted to a jury, resulting in a finding in appellee's favor on both issues. This court is now asked to pass on the evidence as submitted to the jury, and say as a matter of law that appellee was guilty of contributory negligence. To do so we must be able to say that the evidence upon that question is so convincing that reasonable minds can honestly come to but one conclu-

sion. *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697, 88 N. E. 612.

Conceding that it was the duty of appellee on approaching the railroad crossing to look and listen for oncoming trains, and that while she listened she did not look in the direction from which the train came, and for this omission ordinarily under the law she would be guilty of negligence (*Smith* v. *Wabash R. Co.* [1895], 141 Ind. 92, 40 N. E. 270; *Cincinnati, etc., R. Co.* v. *Duncan* [1896], 143 Ind. 524, 42 N. E. 37), still, as said in the case of *Grand Trunk, etc., R. Co.* v. *Reynolds* (1910), 175 Ind. 161, 173, 92 N. E. 733, 93 N. E. 850: "The rule declared is not one that applies irrespective of the evidence, or without evidence. To invoke it, there must be evidence of circumstances showing that a failure to see and hear was caused by a failure to use those senses under conditions where seeing and hearing, or both, were available to give notice in time to avoid injury (citing authorities)."

At the time of the collision four people were in the automobile. Two were killed and two badly injured. From the evidence the jury might readily conclude that when the first car passed over the crossing the second car had passed the nearest whistling post to the east, and because of the close proximity of the two cars and the noise made by the passing car no one in the automobile would be able to hear the second one. When the first car was on the crossing the second car was approaching the low part of the track east, and beyond the high point of the land, which obstructed their view of the car partially, if not totally, until it reached approximately 170 feet or, in time, two and one-fifth seconds of the crossing. The passing car attracted attention from the second car running in the wake of the noise of the first, and the only living witness other than appellee testified that

after the first car had passed he looked to the east and saw no car, then looked to the west, possibly four or five seconds, and then to the east again, when he observed the car which was practically upon them. Taking all these facts and circumstances then existing and appellee's lack of knowledge of the topography of the land and the direction from which the car came, in our opinion a case of fact is presented for the jury, and not a question of law for the court. With this view of the evidence, we cannot disturb the judgment on the ground of lack of evidence to support the verdict.

Appellant next complains of the action of the court in giving to the jury over its objection certain instructions, as set forth in the motion for a new trial by twenty-two specifications.

The correction of the record by *certiorari* answered appellant's objection as to three of these instructions.

Instruction No. 2 is claimed to be erroneous because it fails to tell the jury that it must find that appellant's negligence proximately produced the injury,

6.  while the same instruction referred to the negligence of appellee, and charges that it must proximately contribute to her injury. The instruction told the jury, in part, that before the plaintiff would be entitled to recover in this action, she must prove all the material allegations of her complaint—that is, that she was injured as alleged in her complaint and that said injuries were due to one or more of the acts of negligence charged against the defendant. As to the point made against this instruction, we deem it sufficient to say that one of appellant's requested instructions proceeded upon the same theory as the instruction criticised. We think the jury in all probability better understood what the court meant by the words "said injuries were due to one or more of the acts of negligence" than if he had said that defendant's negligence proxi-

mately produced the injury. But, in any event, the point made was fully covered in the court's instruction No. 20. The instruction was not erroneous. *Chicago, etc., R. Co.* v. *Lain* (1913), 181 Ind. 386, 397, 103 N. E. 847; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1906), 168 Ind. 438, 459, 78 N. E. 1033.

Instruction No. 6 is said to be defective because in defining contributory negligence it omits the element of negligence by omission. Negligence by the omission to do an act may arise to make one guilty of contributory negligence, as well as an act of commission, but the instruction as a whole was not misleading, for it concludes: "In other words, it is the failure of the person complaining of an injury to use ordinary care for his safety under the circumstances of the case, and which failure contributed proximately to produce the injury sued for." This latter portion of the instruction fairly includes acts of omission as well as commission. True, appellant relied on appellee's failure to look and listen, as well as her failure to warn the driver of the auto of the approaching car. But by instruction No. 10 the jury was told that ordinary care required appellee to use her faculties to discover and avoid danger. Therefore, if she could have seen the car by looking, and heard the car by listening, and failed to do so, and by reason thereof failed to warn the driver of the approach of the car in time to have stopped the automobile and avoided the collision, she was guilty of contributory negligence and could not recover.

Appellant challenges instruction No. 8, which told the jury that, if the driver of the automobile was negligent and his negligence concurred with the negligence of appellant, and was the proximate cause producing the injury, etc., the negligence of the driver could not be imputed to appellee. It is claimed that the

instruction assumes that appellant was negligent. There is some room for technical criticism if the instructions stopped there, but, considered in connection with instruction No. 20, no possible harm was done. Instruction No. 20 told the jury: "The plaintiff cannot recover in this cause unless you find that the defendant was negligent as alleged in the complaint, and that said negligence, if any, was the sole and proximate cause of the injuries complained of, etc."

We see no good purpose in extending this opinion to separately consider all of the instructions of which appellant complains, as we have carefully considered each one separately, and all of the instructions as a whole, with the final conclusion that the jury could not have been misled thereby to the prejudice of appellant.

As to the instructions tendered by appellant, and by the court refused, our attention is called first to No. 18.

9. By this instruction appellant sought to invoke the stop, look, and listen rule as an arbitrary standard of care for the measurement of appellee's actions immediately prior to the casualty. This court has said that this rule cannot be inflexibly applied by the courts in all cases. *Stoy* v. *Louisville, etc., R. Co.* (1902), 160 Ind. 144, 66 N. E. 615. Nor can it be said, as a matter of law, "that under all circumstances or conditions, looking or listening at a particular time, in a particular direction, or from a particular place is required." *Cleveland, etc., R. Co.* v. *Lynn* (1911), 177 Ind. 311, 95 N. E. 577, 98 N. E. 67. The instruction in question made it the duty of appellee to look and listen and, if need be, to stop, look and listen at a point and at a time "as would enable her to discover the approach of said car"; in other words, if because of obstructions she was unable to see the approaching car except from a particular point or points of observation, then it was her duty, in the exercise of ordinary

care, if need be, to stop, look and listen at one or more of these places. But if the car had not arrived, or had passed the point in the line of vision, the next question would be, Did she stop and look long enough? Did she stop at the right place and look in the right direction? In case one car had passed, what would be a reasonable time for her to have remained at the point of observation in order to determine whether a second or a third car was approaching? The suggested rule, as we have seen, has been flexibly applied even to steam roads, where usually the trains are run at no greater speed and are made up of a large number of cars drawn by locomotives emitting quantities of smoke and necessarily making more noise than a single car, as in the case at bar. With these considerations before us, we are persuaded that reason would require a more extended flexibility of the rule, if anything, than that adopted for steam roads. But we deem it sufficient to say that we adhere to what we regard as the correct rule, which requires the traveler to use ordinary care consistent with the dangers incident to the crossing and its obstructions and peculiar hazards.

Instruction No. 17 refused, in substance, told the jury that they should find for defendant if the whistle on the car was sounded at such a time and in such a manner as would have enabled a person of ordinary prudence approaching the crossing to have discovered the presence of the car in time to have avoided the collision. The basis of this instruction was the care to be exercised by appellee under certain conditions, if she would be free from contributory negligence. On this question the jury was fully instructed in accordance with the evidence in other instructions which included specific mention of "any warning signals of the approach of the car." But if the instruction was intended to give the jury to understand

Union Traction Co. *v.* Haworth—187 Ind. 451.

that warning signals others than those fixed by statute. would relieve appellant from the negligence incurred in failing to give the warning required by law, the instruction would be erroneous. *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357, 375, 37 N. E. 150, 38 N. E. 594; *Pittsburgh, etc., R. Co.* v. *Martin* (1882), 82 Ind. 476; *Pittsburgh, etc., R. Co.* v. *Macy* (1915), 59 Ind. App. 125, 107 N. E. 486; *Chicago, etc., R. Co.* v. *Coon* (1911), 48 Ind. App. 675, 93 N. E. 561, 95 N. E. 596.

Appellant tendered a number of other instructions which the court refused to give, all of which we have carefully examined and compared with the instructions given, and have concluded that appellant was not harmed by the action of the court in refusing to give these instructions.

Finding no reversible error, the judgment is affirmed.

## On Petition for Rehearing.

HARVEY, J.—The following reasons emphasize the propriety of concurring in the recommendation of denying the petition for a rehearing: There was evidence tending to show that the operation of the 12. cars close together, as described in the original opinion, distracted appellee's attention to the first and from the second; that the noise of the first drowned that of the second and may have rendered whistling useless, so far as appellee was concerned. If the jury found the traveler's attention so distracted, then the care required of her is not properly defined by the strict rule ordinarily applied to crossing cases, but was less in proportion to the distracting circumstances, i. e., the degree of care an ordinarily prudent person would apply under like circumstances or like distraction.

To such a situation the rule applies which is an-

State, ex rel. *v.* Birden, Trustee—187 Ind. 466.

nounced in *Chicago, etc., R. Co.* v. *Hedges* (1886), 105 Ind. 398, 407, 7 N. E. 801, 805, as follows: "If there was any evidence tending to show that the plaintiff's intestate (appellee) was thrown off his guard by such means as might have such effect upon an ordinarily prudent man—and we think there was some such evidence—it was not wrong to submit to the jury the question of contributory negligence." See, also, *Cleveland, etc., R. Co.* v. *Lynn* (1908), 171 Ind. 589, 595, 85 N. E. 999, 86 N. E. 1017, quoting from *Rodrian* v. *New York, etc., R. Co.* (1910), 125 N. Y. 526, 26 N. E. 741.

Appellant claims that instruction No. 2 given is erroneous, in that it is mandatory and undertakes to name all the elements of a cause of action justifying such a mandate, but omits an essential element, to wit, that the jury must find that the negligence of the defendant was *proximate.* Appellant further claims that such a defective mandatory instruction cannot be cured by other instructions supplying the omission. The instruction was not mandatory in the sense claimed. *Chicago, etc., R. Co.* v. *Lain* (1913), 181 Ind. 386, 397, 103 N. E. 847. As the instruction did not pretend to detail or cover all elements of a cause of action, the absent element was properly stated in other instructions. *Chicago, etc., R. Co.* v. *Lain, supra,* 398.

The petition for rehearing should be overruled.

NOTE.—Reported in 115 N. E. 753, 119 N. E. 369.