## JOHNSON *v.* WILSON, ADMINISTRATRIX.

[No. 26,815. Filed January 13, 1937.]

*Jackiel W. Joseph, Linn D. Hay* and *Theodore Dann,* for appellant.

*E. W. Hornaday, Henry E. White* and *Owen S. Boling,* for appellee.

HUGHES, J.—This is an action by the appellee, against

the appellant for damages for the death of appellee's intestate alleged to have occurred as a result of the negligent operation of an automobile by the appellant. There was a verdict and judgment for appellee in the sum of $4,000.

The error relied on for reversal is that the court erred in overruling appellant's motion for a new trial. In the motion for a new trial, it is alleged that the court erred in the admission of certain evidence, and in the giving and refusing to give certain instructions. It is also alleged that the verdict is not sustained by sufficient evidence, and that it is contrary to law.

The complaint, among other things, alleges:

" 'The plaintiff Bertha Wilson, administratrix of the estate of Harry D. Wilson, as such administratrix, complains of the defendant Clarence Johnson and for a cause of action alleges:

" 'That on the 8th day of March, 1930, about 9 P. M., plaintiff's intestate was driving a Ford roadster east on a public highway known as New Augusta Free Gravel Road or 71st Street; that said street or public highway runs east and west from State Highway Number 29, through New Augusta and connects with State Highway Number 52; that said highway is a part of the Dandy Trail that encircles the City of Indianapolis, and traffic was heavy thereon, on said date, which fact was well known to the defendant in that it was being used by many vehicles in passing from said State Road No. 29 over to State Road 52, and the traffic had been heavy on said road for many months before.

" 'That said 71st Street is intersected about one mile west of New Augusta by a road running North and South known as the Zionsville Road; that while plaintiff's intestate was so driving East on 71st Street the defendant with three boys as companions was carelessly and negligently driving a model A Ford sedan south on said Zionsville Road at a terrific, dangerous and unlawful rate of speed; to wit: 50 miles per hour; that the defendant saw the roadster as it was being driven by plaintiff's intestate from the west toward said intersection when

it was 100 yards or more from said intersection and continuously until it reached said intersection or could have so seen it by the exercise of reasonable care; that said intestate drove to the intersection of said Zionsville Road and said 71st Street and had his roadster at or to the east of the center of said intersection and while he was traveling east at that point the defendant carelessly, and negligently and with great force and violence drove said Ford Sedan into and against the north side of the roadster so being driven by the plaintiff's intestate and knocked or shoved said roadster and plaintiff through fence and many feet into a field to the southeast of said intersection; that by reason of the negligence of the defendant as aforesaid his sedan turned over a number of times and rested bottom side up with its rear end on the rear end of the roadster, and both machines caught fire.

" 'That by reasons of the negligence of said defendant, as aforesaid, and without any fault or negligence of plaintiff's intestate, plaintiff's said intestate was crushed and burned to such an extent that he died from said injuries within a few minutes after being so crushed and burned; that the defendant's negligence as aforesaid was the proximate cause of plaintiff's death.' "

It is contended by appellee that none of the instructions are properly in the record, and, therefore, no question is presented as to them. It is the contention of appellant in his reply brief that the instructions are properly in the record under section 2-2010 Burns 1933, section 343 Baldwin's 1934. The court of its own motion gave twenty-four instructions. The plaintiff tendered six instructions, and the defendant tendered seven. The foregoing section requires that all instructions requested shall be signed by the party or his counsel. It also requires that "the court shall indicate, before instructing the jury, by a memorandum in writing, at the close of the instructions so requested, the numbers of those given and of those refused, and such memorandum shall be signed by the judge." The record fails to show that the requested instructions were signed by the

respective parties or their counsel. Neither does it show any memorandum in writing, at the close of the instructions so requested, signed by the judge, the numbers of those given and those refused. It is clear that the appellant has not followed the provisions of said section 2-2010, supra, in properly bringing his instructions in the record.

In the recent case of *Penn. R. R. Co.* v. *Hemmer, Administratrix* (1934), 206 Ind. 311, 186 N. E. 285, 189 N. E. 137, we find a state of facts similar to those in the instant case. In passing upon the question as to whether the instructions were in the record, the court said (p. 317):

"An examination of the record shows a complete absence of a written memorandum at the close of appellee's requested instructions indicating the numbers of the instructions to be given or to be refused. . . . An appellant may bring up instructions by a special bill of exceptions or as a part of the record which 'may be included in the transcript on appeal.' If he chooses to bring them up as a part of the record they must be made a part of the record; and this can be done only by substantial compliance with the provisions of the statute."

It was held that the instructions were not properly in the record.

The case of *Morgan Construction Company* v. *Dulin* (1916), 184 Ind. 652, 109 N. E. 960, was cited, in which there was a like state of facts, and the same conclusion reached.

In the case of *Schamahorn et al.* v. *Gehlhausen* (1928), 88 Ind. App. 93, 95, 163 N. E. 289, it is said:

"Appellants undertook to present error as to instructions under the provisions of §586 Burns 1926. This section provides that: 'The court shall indicate before instructing the jury, by memorandum in writing at the close of the instructions so re-

quested the numbers of those given and refused, and such memorandum shall be signed by the trial judge.' These steps were not taken. Nothing is therefore presented as to alleged error in giving instructions."

See also *Halstead* v. *American Magnestone Corporation* (1926), 84 Ind. App. 205, 149 N. E. 698, to the same effect. Based upon the foregoing authorities and the statute, we are compelled to hold that the instructions are not in the record, and we cannot consider any questions based upon alleged errors in giving or refusing to give instructions.

The fourth reason assigned for a new trial is "that the court erred in admitting in evidence over the objection of the defendant the testimony of the witnesses, W. J. Pray and Bertha Pray, that they heard an automobile driving at an excessive rate of speed past their house on the evening of the accident alleged in plaintiff's complaint when such automobile was not identified or shown to have been the automobile driven by the defendant. It appears from the evidence that the Prays lived on the Zionsville Pike north of 71st street twenty or twenty-five rods. The witness, Bertha Pray, was asked what first attracted her attention to the accident at the intersection and she answered "the roar of the car" that came from the north. No objection was made to the question. Later in the examination, the following questions were asked and answers given:

"Q. I believe you said you didn't even see the car? A. No, I didn't see it. Q. You just heard it? A. I just heard it. Q. Can you describe that noise to the jury? A. It just sounded to me like a car running wide open; that was the way it sounded to me."

There was no objection made to the last question, but a motion to strike out the answer as not being respon-

sive to the question was made by appellant. The motion was overruled and properly so. The answer was responsive to the question asked. The witness was asked if she had some notion about the speed, and she replied, "No, I couldn't say as to that." She at no time, as shown by the evidence, stated that she heard an automobile driving at an excessive rate of speed.

The witness, W. G. Pray, testified that a noise attracted his attention just immediately before the accident. He was asked to describe the noise to the jury. His answer was:

"A machine came past our house fast—it sounded like it was fast. It sounded like it was wide open."

No objection was made to the question. The appellant moved to strike out the answer on the ground that "It is simply a conclusion of the witness." The motion was overruled. The only questions asked of this witness as to speed were asked by appellant on cross-examination as to the car coming from the west, which was the decedent's car. The witness was asked on cross-examination by appellant if he could tell anything about the speed the automobile from the west was traveling, and he said he could not. The witness was further asked if the machine was running fast or slow, and he said, "I believe it was running a pretty good gait. I thought it to be speeding along pretty fast." This evidence was brought out by appellant on cross-examination, and, even if harmful, he cannot now complain. In view of the evidence of the Prays as above set out, there is no merit in the fourth assignment of appellant for a new trial for the reason that neither of the witnesses testified that they heard an automobile driving at an excessive rate of speed past their house, unless it be the evidence brought out on cross-examination of Mr. Pray by appellant as to the speed of the car of the decedent going east, and as to this appellant cannot complain.

The cases cited by appellant in support of the fourth assignment of error are not applicable under the facts in this case.

It is further contended by appellant that the verdict of the jury is not sustained by sufficient evidence, and that it is contrary to law.

It appears from the evidence that on the night of March 8th, 1930, the appellant and three other young men were out riding in a Ford sedan, having gone from the city of Indianapolis north to Zionsville; and near 8:30 p. m. they started to return to Indianapolis on what is known as the Zionsville gravel road, which runs north and south; that south of Zionsville about five miles there is a paved road known as 71st street which crosses the Zionsville gravel road; that appellee's decedent was going east on said 71st street in a Ford roadster, and, while so crossing said intersection, there was a collision of said cars; and, as a result thereof, Harry D. Wilson was killed; that the appellant was also badly injured, and both automobiles greatly damaged.

The four young men when in Zionsville were in a restaurant eating, and there was evidence by the proprietor of the restaurant that one of the boys had a flat whiskey bottle, one-third full, and it was placed on the counter, but at the request of the proprietor, it was returned to the boy's pocket. Mr. Hypes, the proprietor of the restaurant, testified that appellant was partly under the influence of intoxicating liquor. Another witness, Mr. Williams, testified he was in the restaurant at the time all four of the boys were, and that he smelled whiskey on one of the boys, Elza Kennedy. All of the young men denied they had any whiskey or had been drinking. Mr. Hypes further testified that one of the boys, as they left the restaurant, said, "We will be in Flackville in nothing flat." Flackville is located about six miles south of 71st street.

John E. Williams, a witness, testified that while in the restaurant, Elza Kennedy, one of the four boys, said that he would be in Flackville in six minutes. Williams followed the Johnson car for about two miles after leaving the restaurant, and testified that he, Williams, was running about fifty miles per hour, and the distance from the Johnson car varied from time to time during the two miles.

It further appears from the evidence that, as the boys in the Johnson car were just south of the Prays' home, they saw a car coming from the west on 71st street. Some of the boys testified that the car coming from the west was from 275 to 300 feet west of the intersection, and it was claimed by them that they were nearer the intersection than the car of the decedent coming from the west. Robert Miller, one of the boys in the Johnson car, testified that "just about the time we got into the intersection, it looked like he (Harry D. Wilson) was about fifty feet from us, he hit us in the side." Robert Lakin, who was also in the Johnson car, testified that "when we first came to the intersection, he (Harry D. Wilson) was about fifty feet away; we were traveling twenty or twenty-five miles an hour, I imagine; we thought we had plenty of time so we started across and got about three-fourths of the way; it looked as though he picked up speed; I seen we were going to hit, and I ducked." The appellant testified that he saw the car coming from the west, and that it was running fifty miles per hour while he was running thirty miles.

The cars, when they collided, were knocked about twenty-five feet south of 71st street, and about the same distance east of the Zionsville road. A. H. Smith, a Ford dealer of Zionsville, who viewed the cars, testified that "the sedan was laying on the back of the roadster with its front wheels on the ground and the rear end laying on the back of the roadster. The roadster was standing

upright. It had been badly charred. The top had been burned practically off; there was a dent in the left running board, and the left side, and the tires almost burned off. The dent in the running board was between the left front wheel and the left rear wheel, the running board, splash board and side of the car. The motor in the sedan had been set back in the frame, the fenders were crushed up, and the right wheel crushed out of shape."

It is provided by statute that every motor vehicle' traveling upon any public highway shall have the right of way to any other motor vehicle approaching along an intersection highway from the right. Section 47-549 Burns 1933, §11182 Baldwin's 1934. As between the parties here involved, the appellee's decedent had the preferential right. In the case of *Blasengym* v. *General Accident, Fire and Life Assurance Corporation, Ltd.* (1929), 89 Ind. App. 524, 528, 165 N. E. 262, it is said:

> "We think that both drivers should exercise reasonable care to avoid coming into a collision, and that when a driver who is approaching a street or highway intersection, even though he arrived at the intersection at the curb line first, sees a vehicle approaching from the right and near enough that there is a reasonable probability that a collision will occur if both proceed, then it is the duty of such driver to yield the right of way to the one approaching from the right."

It is well settled that, where more than one inference may be reasonably drawn from the facts, the question is one of fact for the jury, under proper instructions from the court. As said in the case of *Indianapolis Traction and Terminal Company* v. *Miller* (1913), 179 Ind. 182, 184, 100 N. E. 449, "Where more than one inference can be drawn from the facts, the question of negligence is one of fact for the jury to determine." And also in *Indiana Union Traction Company* v. *Love, Administrator* (1912), 180 Ind. 442, 447, 99 N. E. 1005, it is said:

". . . where the court can perceive that reasonable men might honestly differ in their conclusions, and the facts are of a character to be reasonably subject to more than one inference or conclusion, as to whether negligence or contributory negligence exists, the question is one for the jury, and cannot be determined as one of law."

It is strenuously insisted by appellant that the evidence does not show that appellant was guilty of negligence, and that it does show that appellee was guilty of contributory negligence; and therefore, there is no liability against appellant.

It can not be said that the facts in the instant case are undisputed, and the inferences which can be drawn from them are unequivocal, and can lead to but one conclusion. We think that the facts as presented by the record in the instant case are of such a character as to be reasonably subject to more than one inference or conclusion; and, therefore, the question of negligence and contributory negligence is one of fact for the jury to determine. The jury returned a verdict for appellee, which amounts to a finding that appellant was guilty of negligence, which was the proximate cause of the death of the decedent; and that the decedent was free from contributory negligence. *Louisville & Southern Indiana Traction Company* v. *Lottich* (1915), 59 Ind. App. 426, 106 N. E. 903.

We have carefully examined the evidence in the case, and believe that it is sufficient to sustain the verdict. The verdict is not contrary to law.

Judgment affirmed.